Case Number 17 at 71 55.. C.C. Association of Chartered v. DC and L.O.V.E. v. C.C. Association of Chartered v. DC Gun Mark, the accountants, and the police department, for the L.O.V.E. Police. May it please the Court, Kelly Dunbar for Public Charter School Appellants. If I may, I'd like to reserve three minutes for rebuttal. I'll begin with a word about jurisdiction before turning to the merits. As set forth in our supplemental brief, we believe that... as long as the Court would like on the jurisdictional issue. As set forth in our supplemental brief, for at least four reasons, the District Court had jurisdiction over this case. And we're confident in each of those bases, and I'm happy to answer questions about any of them. As we explained, this case uniquely implicates the balance of power between Congress and the District, a relationship of constitutional dimension, and that, in this case, sits at the intersection of two congressional enactments, the Home Rule Act and the School Reform Act. The simplest path to jurisdiction, however, may be through 28 U.S.C. 1367, the supplemental jurisdiction route. Count 2 of the appellant's complaint raised the federal question of whether the District's district funding practices are preempted, invoking express preemption and obstacle preemption theories. And this is set forth at J.A. 36 through J.A. 38. The District Court dismissed Count 2, but there is no suggestion that Count 2 was so frivolous such that under Steele Co. and Supreme Court precedent, it didn't invoke the jurisdiction of federal courts at all. And we'd submit that's the correct answer. Any finding that that was a frivolous argument would be unfounded. The District Court cited, and we've cited in our- If there's a supremacy clause to operate, it has to be federal law. It's Trumping local law, correct? Your Honor, Article 6, the supremacy clause, speaks of the law of the United States. And the unresolved question, really, that's actually not resolved even after the District Court decision is, what constitutional status does an enactment that Congress makes pursuant to its Article 1 authority for the District have vis-a-vis a conflicting district enacted law? And this Court's decision in Callaway, for example, highlights, I think, there are a lot of unresolved questions when you- unresolved issues in answering that question. In Callaway, this Court said, for example, it can't be that a district-only congressional law is actually a local law for preemption purposes. Otherwise, you could have a scenario in which Congress, pursuant to its Article 1 authority, enacts a law at time 2 that's been preempted by something Congress has done previously at time 1 in the exercise of its non-local authority, and that that would create confounding problems. And I think we'd submit that this Court's precedent, and really the precedent across the country, haven't answered the question of whether, despite the fact that Congress, for Section 1366 purposes, has ranked district-only congressional law as not federal law for purposes of Section 1331, nevertheless, whether for constitutional purposes, a district-only congressional law is superior to district law in a constitutional sense. And again, we don't think, however this Court resolves that question- that any time you have a law that Congress thought, for purposes of under 1366, would not be one that gives rise to jurisdiction because it's local in nature, that you could later on, as the Supremacy Clause, and get jurisdiction? Or is that not where your argument goes? With respect to Count 2 of the complaint, which again is the dismissed count, and some of these issues arise under Count 1, really, which arose under the District Clause, because as you may recall, the District Court ultimately dismissed Count 2, but explained that the same preemption-like principles, that is, attempting to ascertain what is the relationship between a congressional district-only law and a conflicting district practice, arises under the District Clause. Our submission is that that doesn't necessarily mean that Section 1366 can be overcome in every instance. What's unique about the School Reform Act in which- Wait, are you talking about the District Clause or the Supremacy Clause now? Sorry, the Supremacy Clause. Let me answer the question. What's unique in this circumstance is that we had a congressional enactment, the School Reform Act, that imposed direct- that imposed obligations directly on the mayor and the district's council's offices, organs of the district's government. That is, Section 2401 imposes direct mandatory obligations with respect to how the district's organs of government are supposed to exercise their delegated authority with respect to public school funding. And again, we think it was a non-frivolous argument to say when the district takes actions that are expressly or impliedly inconsistent with that, again, under express preemption theories or conflict preemption theories, that that raises a federal question that's sufficient to give rise to federal questions. But we know that the school- the provisions under the School Reform Act that you're relying on there, because the way your argument is sequenced, as I understand it, is there are provisions of the School Reform Act that are problematic for the district. And those provisions are problematic. And because the district didn't adhere to those provisions of the School Reform Act, that creates a conflict that is cognizable under the Supremacy Clause. So you go through the School Reform Act to get to the Supremacy Clause. That's correct, Your Honor. Just as you would, I would submit that that analysis would be similar to how you would analyze a federal preemption question in many contexts in which you have a preemptive statute that is then analyzed under the rubric of Supremacy Clause precedent to determine- Right, so then I'm not understanding, for example, that why it wouldn't mean that in any case where you have a statute that would be treated as local in character for 1366-1331 purposes, you wouldn't just have a Supremacy Clause overlay that would then give rise to federal question- that would give rise to federal question jurisdiction. Well, I think- I think in the hypothetical- I think- I think the statute- what's unique about this statute, what I submit, wouldn't be the case in any sort of hypothetical locally-enacted congressional laws, that the obligations at issue here are obligations that are directly imposed upon the district. And so this isn't the garden- this isn't a garden variety dispute about a violation of district law. The claim is that the district, the mayor and the district's council- So how about this? So in Diamond, in our decision in Diamond, the law, the provisions, the D.C. Code provisions which were enacted by Congress that were at issue, prevented the council from enacting any rule that was with respect to the jurisdiction of the District of Columbia Courts. So that was a limitation on the council. And what we said was that a claim under that law wasn't enough to give rise to federal question jurisdiction because under 1366 that law deals specifically locally with D.C. And then if you tack on a supremacy clause claim in that situation, would that work? Or am I not understanding correctly? You know, it's conceivable that in that circumstance one could have stated a non-frivolous supremacy clause claim. And I think- Why couldn't you have? Why wouldn't it have been equally non-frivolous as this one? Or is there a difference? I don't see a difference. No, I'm accepting the premise of the hypothetical that one could frame that as a supremacy clause problem. It obviously wasn't in that case. And I think that's a significant difference. And I can understand why this court might have a concern that a plaintiff or a party could make an end run around 1366 by addressing that as a supremacy clause violation. But I'd submit if you want to adhere to the plain text of section 1366, that's precisely what 1366 says. It says for purposes of this subchapter, the provisions governing federal jurisdiction, that a law that Congress enacts only for the district shall not give rise to federal question jurisdiction. However, the district court noted the same distinction in deciding this question in the preemption context that does not necessarily answer the question whether from a constitutional standpoint, again, whether you're thinking of the question under the supremacy clause or under the district clause, that the congressionally enacted law is superior to conflicting local law. So even if you accepted that for jurisdictional purposes, that wouldn't, given that section 1366 is expressly limited to the 1331 question. What if Congress, in a statute that's at issue, say the School Reform Act, and it just says, it's axed on a provision that says, by the way, we don't think this law is supreme for purposes of the supremacy clause? That's an interesting, it's an interesting question. I think the answer, Your Honor, is probably that Congress doesn't get to define the constitutional status for constitutional purposes. And the reason is, is I think that would otherwise create problems as to whether Congress is effectively delegating or handing off a constitutionally assigned responsibility. And Chief Justice Marshall, as early as Cohen's versus Virginia, recognized that when Congress acts under its Article I Section 8 authority over the district, it may be, in some sense, acting as a, quote unquote, local legislature. But it is still Congress acting with the national legislature. And that part of the reason the framers invested Congress with control over the territory that would become the seat of the government was because they recognized that there would be magical level. But Congress does get to define the jurisdiction of the federal courts. Congress does get to define the jurisdiction of the federal courts, right? That is correct. For subject matter jurisdiction purposes, correct. Which is what we're worried about. I'm sorry, I took that hypothetical to mean that Congress was attempting to say something, a law that it enacts, was not supreme for purposes of Article, for purposes of, say, Article VI or Article I. In which case, I would say that would raise constitutional trouble. Whether Congress could write a statute that says, if you want to bring a supremacy clause challenge to a local district law, you can't do so in federal court, I think Congress probably could do that. But I'd submit the plain text of 1366 doesn't do that. It only says that if you were bringing a challenge arising under a locally enacted law, that ought to go to superior court. A constitutional claim, by definition, doesn't arise under the district law. It arises under the supremacy clause or the district clause. Or to be more precise, I think after Armstrong, the answer is it arises under a federal court's equitable authority to enjoin unconstitutional action by a state, local, or federal government official. Well, so we have the authority to do a remedy, but that all depends on you having a federal right to enforce. And that's where I think the Armstrong problem arises for you. You have to figure out what your claim arises under. And if it's not arising under the supremacy clause, because the supremacy clause does not create individual rights, then individually enforceable rights is simply a rule of decision. Then how can that be the source of federal law in which your complaint arises? It seems instead like you're arising under the School Reform Act. Your Honor, I'd submit Armstrong analyzed that question differently, which is you recall Armstrong involved states making the challenge under the Medicaid Act. The court, I think all nine justices agreed that we should abandon talking about whether there is such a thing as an implied right of action in the supremacy clause. But all nine justices also agreed that there is a long tradition of federal courts exercising equitable authority to enjoin unconstitutional state action, whether by federal, state, local government officials. And that federal equitable power was essentially what a preemption claim arises under. Then there is a separate inquiry, and this is where the justices split, as to whether Congress can withdraw equitable authority by establishing a detailed remedial scheme. But there was no question in Armstrong, Your Honor, as to whether the Medicaid Act itself created a private right of action that was enforceable. The assumption was that federal courts had inherent equitable authority. And I think scholars after Armstrong have spoken of essentially a recognition that there is essentially a cause of action that arises under federal equitable principles to enjoin unconstitutional action. And we submit that those same principles are applicable here. Whether you're thinking about that under the district clause or the supremacy clause. Sorry, I may not have satisfactorily answered the question, but again, the short version is I don't think that either before or after Armstrong. An affirmative cause of action or affirmative legal right is to have an injunction if you win under your other statute that they did something they weren't supposed to do. The federal equitable authority sounds to me more the remedial thing that kicks in once you've established a conflict between a state and federal law, and you're suing under the Medicaid Act, a federal statute. So you didn't have this issue. But here, the only thing that seems to be federal is this asserted equitable remedial power. The School Reform Act claims apply only to the district, and so don't arise under federal law for those purposes. The relevant Home Rule Act provisions, the relevant ones here, apply only to the district, and so therefore do not arise under federal law for purposes of 1331. So your position is the fact that courts have an equitable remedial authority is enough to create federal jurisdiction. Yes, sorry, sorry. That clarification helps me understand. I think I may have misanswered. Our position is that under either the district clause or the supremacy clause, that a law that Congress enacts only for the district, whatever it means for Section 1331 jurisdictional purposes, is constitutionally ranked superior to conflicting district enacted law, that is, law enacted by the district government. And as the district court put it, she thought that under the district clause, the question was, Congress has the right to pass a superior, effectively preempting enactment, even if it is directed only at the district that flows inactively from the assignment of plenary authority to Congress in Article I, and that as a constitutional matter, again, whether you're thinking of this question under the supremacy clause or the district clause, that statute that Congress has enacted, that it intended to be superior, serves the same role as a preempting statute in Armstrong. That is, before and after Armstrong in preemption cases, courts didn't look to whether the statute that was doing the preemptive work, the federal statute, created a cause of action itself. You have the cause of action in equity to sue to enjoin state or local action that conflicted with that superior enactment by Congress. And our position is that under the district clause- Can't Congress deal with equity? In other words, it seems odd that Congress would have wanted to keep cases under the School Reform Act out of federal court. Let's just assume that. I mean, and I don't even think you dispute that, actually, that the School Reform Act of its own force doesn't give rise to federal jurisdiction. There has to be some overlay that comes from the Constitution that does so, because I don't think your supplemental- We're not making that argument now. Right, right. So then Congress wanted to keep School Reform Act cases out of the federal courts and wanted them to be just litigated in the course of the District of Columbia. But yet, they were incapable of doing that because there's always, apparently, a non-frivolous supremacy-slash-district-clause overlay that could have been tacked on to any one of those cases, and then they would always get to federal court. And then the School Reform Act claim just comes along as a supplemental jurisdiction rider, and so effectively, Congress would have done nothing. Well, two responses, Your Honor. First is that at some point, the question as to whether the supremacy clause, the interaction between a district-only law and conflicting district-enacted law may become a frivolous issue. That is, when courts actually decide the question, and the district court here did decide the question. That is, one of the reasons, and one of the reasons the Supreme Court has stressed in applying the substantiality standard is where there's conflicting precedent, a federal court has to have jurisdiction to be able to decide the merits, even if it's to say the claim fails. And so at some point, that question may be resolved. But second, I'd submit, Your Honor, that particularly with respect to a jurisdictional statute like 1366, if Congress wanted to write that provision to apply to any claim in which a court in the process of adjudicating a constitutional claim that arises under federal law, that Congress wanted to say we want those in superior court as well, Congress could do that. But 1366 as written doesn't do that. It only says the claims that arise under a locally enacted congressional law. And I think applying straightforward preemption or district clause principles, those claims arise under the Constitution. And 1366 simply doesn't speak to claims arising under the Constitution. And I understand that in the course of adjudicating that constitutional claim, a court will pass on necessarily the meaning of the School Reform Act or the Home Rule Act. That's also true in preemption cases and that's also true in lots of other contexts. So I guess the bottom line is, had Congress wanted to write a provision that not only sent all claims arising directly under the district-only congressional law to superior court, but also any constitutional claim which might involve interpretation of a district-only congressional law, it could have said so, but it didn't. Not any constitutional claim. We're only talking about either supremacy or district clause. We're not talking about equal protection or First Amendment or anything like that. No, Your Honor. But I'd submit that the analysis is the same. That is, you don't think of a First Amendment claim as, I guess the point, Your Honor, is that you think- Well, the First Amendment creates substantive rights. The supremacy clause does not. That is correct, Your Honor. But again, I think Armstrong, what Armstrong, again, back to the Armstrong, Armstrong recognizes you have the federal cause of action effectively arising as a matter of federal equitable principles. The district clause, I think, would arise. I'm not sure there is a court decision in dealing with the question of whether there is an implied right of action under the district clause. I just wanted to ask you, it's not so much implied right of action, but do you think that, so he keeps saying it's a supremacy clause slash district clause, and we've been doing the same thing, but are they different for this purpose? Is there some argument that the district clause creates substantive rights against, do they track one for one, or would you have an argument that Armstrong doesn't apply if we think this is really a district clause issue? Who wins the tug-of-war between the counsel and counsel? Well, I think, Your Honor, I do think the analysis is slightly different, and the district court, obviously, assigned significance to this difference. And the fact is that, I think we alluded to this in the opening, in both my opening here and the supplemental brief, which is that the Article I, Section 8 provision regulating the relationship between Congress and the district really is a unique constitutional provision that recognizes a very unique and sui generis constitutional status between Congress and the district. And the idea that Congress, just as a plain interpretive matter, the idea that Congress, through 1366, would have wanted to channel all litigation challenging district action, which is really a direct affront to an exercise of congressional authority under the district clause to superior court, I submit just doesn't make good sense of what Congress was trying to accomplish in 1366. And there's no clear evidence that that would be the case. So, the answer to your question, Your Honor, is that under the district clause, given the unique relationship recognized, and given that this case, under our theory again, is that Congress was exercising its constitutional authority, it wanted to do so in a comprehensive and mandatory and exclusive manner to address a problem that the local district government had been unable to fix, that is, educating the district's youth, that the idea that 1366, plainly read, means that that type of suit has to be brought in superior court isn't a fair reading of the text of 1366, given that that claim arises under the Constitution and arises under Article One. Could one of your students at Eagle Academy or Washington Latin, could you have added a claim, an equal protection claim by one of your students? And avoided. Your Honor, I believe that's certainly a possible claim. I'm aware that there has been constitutional litigation across the country with respect to charter school funding. I'm not aware of the outcome of all of those cases. I think one of the things that makes this case unique, having said a little bit more than a word about jurisdiction, to just briefly touch on the merits of the case, I think what really makes this unique is that Congress itself took upon itself the, again, faced with what was a crisis in public education for many of the district's youth, took upon itself to create public charter schools as a new model of education in the district and imposed a statutory requirement that funding be provided on a uniform per-student basis to charter and traditional schools alike. And that funding requirement, I think, is clear from the text structure, the text structure, purposes, and legislative history of the statute was designed to serve really important purposes to ensure that charter schools would have a chance to succeed, to implement basic notions of fairness and equity for the district students. You know, at the time this complaint was filed, public charter school students were 37,000 students in the district. Now, I understand that number's up to north of 43,000. Essentially, one out of every two district students attends a public charter school. And the claims that we're presenting here are that the district, both expressly and impliedly, has taken actions that directly conflict with that uniform funding mandate. And- Can I ask a question just about how the merits arguments fit together? Please. So, there's an argument that the district court didn't resolve, which is whether the Home Rule Act properly construed would allow D.C. to amend the School Reform Act. And if, just hypothetically, if I thought the Home Rule Act were best read to allow D.C. to amend the School Reform Act because it's a law that deals specifically with D.C., then is that a viable path for reaching a resolution and then just not engaging on any of the questions of whether the path that D.C. has chosen, in fact, conflicts with the School Reform Act? I don't think so, Your Honor, because we have another argument, and I'd submit the easier path to resolve that question is that to the extent you think that the Congress in 1973 that enacted the Home Rule Act intended a basic repeal or intended the district to have an essential repeal or amend authority, that the later Congress, in enacting the School Reform Act, impliedly withdrew any such authority with respect to at least the central mandatory terms of the School Reform Act. That is, following the path of analysis this Court adopted and shook, which looked at a very similar circumstance. So I get that argument, and I know you can't abandon it, and I'm not asking you to, but so it's true, I think, that if Congress, just to make it easy, hypothetically, they added a particular provision that said the provision of the Home Rule Act that otherwise would allow amendment or repeal doesn't apply to the School Reform Act, then that authority doesn't exist, and you're saying that there was something functionally equivalent to that without the explicit provision that they impliedly did the same thing. I guess I'm asking even more basic questions. Let's just suppose I disagree with you on that. Just assume I disagree with you on that. Then, if I conclude that that amend or repeal authority that's designated in the Home Rule Act applies to the School Reform Act, then is there anything that prevents me from saying, well, even if the district didn't think it was amending or repealing the School Reform Act, it has the authority to amend or repeal the School Reform Act under the Home Rule Act, and that's an easier way to reach a resolution without having to decide whether the district, in fact, conflicted with the School Reform Act in promulgating the challenged methodologies. So, just to restate your, just to make sure I'm answering the question correctly, if your position is that the Home Rule Act clearly gave, as enacted in 1973, clearly gives the district the authority to enact conflicting, repealing, amending legislation with respect to any subsequent congressional enactment, then yes, I think that would resolve. I think that would resolve any need to decide whether there is a conflict between the School Reform Act. And obviously, you can't buy into that. But I would, just to make clear that I'm not being accused of abandoning anything, there would then be the question, again, as to whether the later Congress impliedly withdrew that authority, and again, that's our central position here, is that you don't need to resolve the somewhat muddled question of what the Home Rule Act meant, what Congress meant when it enacted the Home Rule Act in the 70s, because it's quite clear. And just to put a fine point on it, since I think the exchange has helped me, so it doesn't matter that the district, it wouldn't matter whether the district thought that it was amending or repealing. If you buy all the assumptions that you can't buy, but I'm asking you to buy, it wouldn't matter that the district promulgates provisions that are an effectuation, it believes are an effectuation of the School Reform Act, and doesn't believe that it's amending or repealing the School Reform Act. But the fact that the district would have the authority to do that by hypothesis would be enough to allow resolving the case on that basis. I believe so, Your Honor. Okay. And I think, and of course, to fight the hypothetical a bit, it's just the first step, and again, it may not be relevant to your analysis, but I do think, and I think this is for, this bleeds back into the jurisdictional question as well, what's unique about this case is not only that it really does speak to the balance of power between Congress and the district, but this is a case where there is really a very express, avowed purpose of being able to amend, repeal acts of the School Reform Act. The district really hasn't hidden the fact, if you just look at the D.C. Code and how it has implemented the School Reform Act, the district, in the district counsel's brief, as amicus, basically characterizes what it's done as amending and adopting different interpretations of the School Reform Act than what Congress  And that's one of the reasons to, again, back to the jurisdictional point, that we think this is really the type of dispute that sensibly belongs in a federal forum, which is understanding, as between a congressionally enacted law and conflicting, purportedly amending district legislation, which is superior and who has authority is a federal question. But I do think that if you posit that the Home Rule Act grants an across-the-board blanket authority to repeal and amend, and if you posit that Congress didn't impliedly or explicitly withdraw that at a later point, then that would be sufficient to address the merits question. Can I just get some clarification from you on your position on the supplemental payments? Yes, Your Honor. Because I wasn't totally clear where you ended up landing on that, because it sounded like some supplemental payments you thought wouldn't have to be matched, but some would. For example, if the school burned, public school, DCPS school burned down, you could give them the funds to rebuild that year and wouldn't have to give the same funds to all the charter schools that didn't burn down? Yes, Your Honor. So what's your position on some of that? Yeah, so certainly. Which is in and which is out? Our position is that the school reform act's tax would permit a supplemental annual payment. That supplemental annual payment would need to be made through the uniform funding mechanism. That doesn't, however, lead to the sort of absurd windfall results that the district accuses are reading and producing. Principally because in many of the circumstances, the emergency or exigency circumstances that the district identifies, those costs or expenses would not be an operating expense. They would be a capital level expense, or they would be what I understand in accounting and budgeting terms as a non-operating expense, which is a non-routine, non-expected, truly emergency cost. And I think that question really speaks to a fundamental problem here, which is that the district hasn't really taken seriously its obligation to have to fund uniformly through the uniform funding mechanism. I'm not sure I'm clear here on what this line is. Sure. So, all right, burn down school, that doesn't result in all the charter schools having to get the same payment. What if there's just a sudden influx into the DCPS schools because of, I remember after Hurricane Katrina, a lot of students came up all over the country, including to the district, and suddenly needed to be schooled here because they couldn't be schooled in Louisiana. And so there's a sudden influx into the DC public schools that isn't anticipated when those annual payments are first made. Would the charter school, so a supplemental payment needs to be made for those students, for their education, would that have to be made to charter schools and if they hadn't admitted any of those students? The answer is it's unclear for two reasons. The first is that the district would need to have come up with a definition of what an operating expense is and there would be a question as to whether- Well, you moved to summary judgment in this case, so I'm trying to figure out your theory of getting summary judgment on these supplemental payments, so I don't know how it can be unclear. You must have a theory. Well, it's only unclear because there is, there are essentially three categories of costs that are at issue here. And the uniform funding mechanism by its terms only applies to one of those categories of costs, that is operating expenses. There are definitions of operating expenses that exclude, even though it might be a sort of day-to-day thing necessary to keep a business or a school running, there is a concept called a non-operating expense, expense, which is something that is truly unexpected, truly one-time, it's conceivable that a hurricane scenario that you're positing would fit into that. Well, hurricane didn't hit here. This is a sudden influx of students. Well, right, if the movement, if the mobility of students is the result of something truly- Is that your position on what operating, I mean, I know you're telling me they'd have to give you a definition, but I had thought that you had a definition of operating expenses. So would your definition of operating expenses include or exclude payments per student from a surprise student influx, like after Hurricane Katrina? I think the answer is that that probably would be an operating expense, and that gets to my second answer, which is that given the structure Congress was establishing here, which is a mechanism that is per people, if in your hypothetical, and I think it is, because it's Katrina, students are moving in from outside the district, that is, we're not talking about intra-district mobility, given the nature of the per-student funding formula, which is that money should follow the student, and it should follow students on a per-student basis, if mid-year, there's a sudden influx into either sector of system, because of an unexpected event, and assuming those are operating expenses, because the district doesn't decide, actually, this is just more like an emergency exit. No, you've got a definition of operating expense, so I assume you wouldn't let the district just define, if you think it's an operating expense, I assume you're not gonna let the district just say, we disagree, and you lose. Right, right. Okay, so your definition of operating expenses would say that's in. I believe so, Your Honor, but in that circumstance, we would have no objection, and there's nothing in the School Reform Act that would preclude the district from making prorated per-student mid-year funds, so long as they followed the formula, so long as that they followed the student formula. That is, so long as there was the aggregate equity that the formula was designed to accomplish or maintain. So what does that mean? Does that mean, let's just, because I'm not that good at math, so let's assume 1,000 students come in, and they come in in December, so you're gonna need 2 3rds of the year's payment to educate them, so they give 2 3rds of the annual payment times 1,000 to the DCPS schools, because they're the ones gonna educate these kids for the balance of the school year. They have to get a same check to the charter schools, or only if the kids go to the charter schools? Again, if the mobility is coming from outside the district, I don't think there's anything in either the text of the School Reform Act or our interpretation of it that would demand those same checks go to public charter schools,  So then it wouldn't be operating expenses subject to the formula, or is your understanding that the formula wouldn't apply to operating expenses that are incurred in December? No, my understanding of the formula is that the hypothetical you're positing would maintain the integrity of the per-student equality uniformity requirement that is embodied in the School Reform Act. So the charter schools wouldn't get the money, unless the students went to a charter school? That's correct, and this is an important point, Your Honor, because there are mechanisms that the district does follow to make mid-year adjustments based on mobility changes to public charter schools that it doesn't currently make for district public school students. But there's nothing, again, I think, in our interpretation of the School Reform Act that would preclude the district from being able to make those mid-year mobility adjustments so long as they followed a pro-rated version of the per-student formula that the School Reform Act requires. But I don't want to miss the point, though, to say, and I understand that we have an obligation to come up with a definition, but I think a big part of the problem of what's been going on here with respect to this funding is that the district has never really sat down and come up with a conceptual definition of what an operating expense is, what a capital expense is. And the adequacy study, which the district included in the summary judgment record below, which is at JA 580 and 581, makes this point emphatically. That was a study by independent consultants that was asked for by the Deputy Mayor of Education in response to criticism that there had been inequitable funding. This was a 15-month study, and what the study found is that the district really has no coherent conceptual reporting mechanism for figuring out what operating expenses are. I'm sorry, I'm just, I'm not quite understanding why. So do you need, you moved for summary judgment in this case, correct? This cross-motion's for summary judgment. Yes, correct, Your Honor. So you moved for summary judgment, and I thought you were making an argument under the meaning of the statute here that you have an understanding of what operating expenses are, and they include supplemental payments, or some supplemental payments and not others, and they could render summary judgment for you on that understanding, correct? Or not? I'm just confused as to why we need to know what, do you think the district gets difference if it comes up with a definition? Yes, absolutely, and it's certainly relevant. I think it's relevant with respect to supplemental appropriations, but it's more relevant with respect to teacher retirement payments and facilities-related payments. The district has taken a quite across-the-board categorical position that those costs aren't operating expenses, and then accused us of adopting such a wooden, inflexible interpretation of the statute that they wouldn't be able to respond to exigencies or emergencies. All I'm suggesting is, Your Honor, is not to attempt to relieve ourselves of summary judgment burden, but rather that the term when something is an operating expense versus when something is an operating expense may well involve some tough judgment calls. Here, those judgment calls aren't really necessary to resolution of this case, because the district has taken an across-the-board position that teacher retirement payments don't count, and that facilities-related costs don't count, despite the fact that those fit with any commonly accepted definition of operating expenses. If the court would rule in our favor and say all operating expenses for public school students in the district need to be funded according to the uniform formula. How can we do that without knowing what operating expenses means? Well, there is a definition. We think there is an accepted definition of what an operating expense means. How that definition applies, as I'm sure you may be aware from sitting on too many FERC cases, how that definition applies in any particular case to any particular line item or expense may involve a matter of judgment. I'm saying that case, that issue isn't presented here, Your Honor, because you have a circumstance where the district hasn't attempted to come up with a definition and has instead taken a rather across-the-board categorical position that things that fall within the core of the definition, that is essentially payments for current teacher salary packages, that is the pension piece, and payments for routine repair, non-structural maintenance of schools are not operating expenses when we think under any accepted definition of operating expenses those count. The first problem that you were suing over was supplemental payments and now you keep leaving that out because we've discussed how complicated that is. So is the answer here that nobody should get summary judgment? You need to have more proceedings to figure out what supplemental payments include or don't and what operating expenses mean or not? Are we supposed to give the definition of operating expenses? Are we supposed to wait for D.C.? I'm confused as to what you want now. Sure, if we're only, so with respect to, we would like a declaration by this court that facilities-related operating expenses and teacher retirement payments are operating expenses subject to the formula. And we've, I think, laid out the reasons why that's the case. You're wrapping your supplemental payments. I was just wanting to bracket those to then move to the, if the only question is supplemental appropriations, the one specific example of a supplemental appropriation that's in the record is a fiscal year 2012 supplemental appropriation that the district made for $25 million that was made for, according to the district, for a variety of expenses arising from budget shortfalls and funding shortfalls in the district schools. We have set, as we set forth in our statement of undisputed facts, and the district hasn't disputed, those are routine day-to-day operating expenses. And the district vigorously defends its right to be able to make those mid-year supplemental operating expense payments on a district basis. And we think that's contrary to the tax structure and purposes of the act. So with respect to the relief we're asking for from this court, with respect to that question, it's simply that the uniformity requirement that Congress imposed wasn't meant to attach at only one point in the budget cycle. If something is an operating expense and the district wants to fund that mid-year, it needs to do that consistent with the terms of the uniform funding mandate. Thank you. Thank you. Mr. Letterstein. May it please the court, I'm Jason Letterstein for the District of Columbia and the other individual district officials. This court does not have subject matter jurisdiction and neither did the district court. As we've indicated in our supplemental brief, that question is determined and it's well settled that it's determined by the well-pleaded complaint rule. The well-pleaded complaint rule looks to the idea of, although it didn't say these words particularly, basically the prima facie case that you have for a plaintiff who's seeking relief. What do you need to get your relief? And as a result, when you go into court, you look at first, if there is one existing, the cause of action. You look at the cause of action that they have. Is there a federal question that's involved? What the courts have said is, you don't go and look at anticipatory claims in a complaint with respect to what defenses might be by the other side to determine if you've reached a federal issue. You look at the well-pleaded complaint and that's your answer. And here, what the charter schools are seeking is relief under the School Reform Act. And under the School Reform Act, that's a local law. It's a local law, not just for jurisdictional purposes, but even for any substantive law. It's clear from the jurisdictional statute that Congress enacted back in 1970 that the School Reform Act is local law. It is one that was passed exclusively for the district. There's no dispute about that. And as a result, you can't come into federal court saying that there's been a violation of the School Reform Act because you're saying that there's a violation of local law. You have to go to the D.C. Superior Court. So they're not relying on the School Reform Act, right? They're just saying that the School Reform Act is supplemental jurisdiction. They're relying on the constitutional claims as the supremacy clause and the district clause as the basis for coming into federal court and then treating the School Reform Act claims as supplemental jurisdiction riders. Well, I mean, first off, you wouldn't look at just the counts that are denominated in the complaint. You would look at the gravamen of the relief that they're seeking. And so supplemental jurisdiction doesn't come into play with the School Reform Act because the supplemental jurisdiction means you have to have original federal question jurisdiction first before you look at resolving the School Reform Act. And under their well-pleaded complaint, under the well-pleaded complaint rule, what they're seeking is relief under the School Reform Act. They're saying that the district has violated the School Reform Act. What is their cause of action? What is the source of their cause of action? The School Reform Act. So School Reform Act creates a cause of action? Well, I mean, you know, whether it would create a private right of action for purposes of damages, we just don't think it's the issue here. I'm not asking, I'm just asking, what is the source of their, what is their cause? You said we have to start by looking at what their cause of action is. And so I'm trying to figure out what cause of action it is, in your view, that they suit under, because you haven't made any arguments about there not being a cause of action here. So I'm trying to figure out what you understood to be the cause of action so I can analyze this jurisdictional question. The School Reform Act. So your position is it creates at least an equitable cause of action? We are saying that if the School Reform Act is a law that instructs the District of Columbia to do something, that one would always be able to seek some sort of equitable belief that a government is not following the law. In, under district law or under federal law? It wouldn't matter. I mean, if the district is violent. It might matter. If it doesn't matter to me, what do you, so you can't enforce the Supremacy Clause under 42 U.S.C. 1983, Supreme Court said. So I'm struggling to figure out what the, and it's not an APA case, you're not a federal agency for those purposes. So I'm trying to figure out what the source, and maybe there's a district statute I don't know about that is the source of their cause of action to enforce the School Reform Act. Well, again, our belief is that one wouldn't need a private right of action for damages purposes. One could get equitable relief by claiming that a government is not following the law. And it could be a state law, it could be a local district law, it could be up on the federal level. You wouldn't need to get into an analysis about whether you have a private right of action. So we do believe that the School Reform Act could be, hypothetically, a basis for going into court and saying it's been violated. So as we read the complaint, what the charter schools are claiming is that there's a cause of action under the School Reform Act. It's been violated. It's a local law. Is that the way the law works in the district, that there's kind of an ex parte young type of action for violation that just springs from the law itself, that gives rise to a cause of action for compliance with district law? I'm sorry, the D.C. Court of Appeals has said that. In Sierra Club, in which they indicated that you don't need to do an analysis under whether this particular law was an implied private right of action for citizens. But rather, when you're talking about whether the government is following the law, you don't need that analysis. You have an ability to seek equitable relief to stop the government from acting unlawfully. And that applies to acts of Congress that apply only to the district, as well as to district? Well, acts of Congress that apply to the district are local laws, so yes, it would. No, I didn't know if that only applied to council-enacted laws. I'm sorry, I can't. I'm just, I didn't know if that only applied to council-enacted laws, or if they've actually, the D.C. Court of Appeals has purported to say what cause of action there is for. Sierra Club case was about a local district law that the D.C. Council enacted. But we see no principle reason why it wouldn't apply to congressional acts, or just for the district, because the district treats them as local law. And so, under the well-pleaded complaint rule, you look through the nomenclature that they might have put at the top of their count, and you see here that all they're seeking is relief under the School Reform Act. But count two says violation of the Supremacy Clause. Right. So it's not styled as a claim that seeks relief for violation of the School Reform Act. It's styled, count two is, as violation of the Supremacy Clause. Right. Normally, you would put counts in as alternative counts, right? In a complaint, you would put in three counts because you believe you violated each count in some form through the facts that you're arguing in the case. So what if the ultimate merits were that the district didn't violate the School Reform Act? Is there a Supremacy Clause issue? There's not. Is there an Article I, Section 8 issue with the District Clause? There's not. What they're seeking here is relief under the School Reform Act. They don't have any alternative grounds of relief under the Supremacy Clause. It's all premised on a violation of the School Reform Act, which is local law. What they're doing is exactly what the Supreme Court has said is something that federal question jurisdiction was designed, the test court was designed to avoid. When plaintiffs seek to get into federal court by anticipating what the defendant is going to raise and then therefore saying there's a federal issue involved with that, that doesn't mean the federal issue may not arise if there is a federal issue. It doesn't mean it can't exist in the case. It simply means that the federal courts aren't the ones to deal with it in the first instance. Why is the School Reform Act a violation of the well, I mean, I'm sorry, the Supremacy Clause a violation of the Well-Completed Complaint Rule because I get your point that they only make out a violation, a claim, I guess they call it a violation of the Supremacy Clause if there's a conflict with the School Reform Act. I think I understand that because the complaint is actually framed that way. That the reason there's a Supremacy Clause problem is because the district has acted inconsistently with the School Reform Act. So that part of it I understand. I guess I'm not completely understanding why that means that the Supremacy Clause only comes up by way of defense. It's on the face of the complaint. It's just that you have to go through the School Reform Act first. I get that. But that seems different from saying that therefore it's only coming up by way of a defense. Well, I apologize. It's not the defendant raising the federal issue. But what they're anticipating is that if you, if there's a violation of the School Reform Act, if that's what's found on the merits, the district will come back and say, oh, well, although we didn't intend to amend or repeal the School Reform Act, if you find for some reason inadvertently that we're violating it, we can do so under the Home Rule Act. And as a result, you can't get any relief. And so then the charter school's anticipating that that would be the defense, raising their complaint proactively to say, oh, well, if you do go against the School Reform Act pursuant to this belief that you have under the Home Rule Act, you violated federal law. Federal law is preemptive. Therefore, it's a Supremacy Clause case. That's their, that's, we understand that. So that seems like the way that count one is framed, which is a violation of the District Clause and the Home Rule Act. That's right. It didn't seem like the way count two is framed, which is a violation of the Supremacy Clause. Are you're just saying it necessarily has to be the way to read that? Yes, because you have to look at what they're seeking. And what they're seeking, fundamentally, is relief because there's been violation of the School Reform Act. The only reason the Supremacy Clause of the Home Rule Act is even discussed is because the district is saying that if in fact we have violated it, we have the authority to do so. But in the well-pleaded complaint, well, you don't do that. You don't look and anticipate about what defenses might be raised. You look at the gravamen of the prima facie case in the original causes of action based on the facts that they're alleging. And we submit that it's well settled under the well-pleaded complaint rule that this would not suffice to get federal question jurisdiction. There's no federal issue arising in the case in chief. And so you didn't make a jurisdictional objection below? That was just, it just didn't come up? It didn't come up. It's an oversight. Okay. I just wanted to make sure there's no theory behind the theory shift. Right. Now, I mean, the well-pleaded complaint rule does have a small limited exception for when federal issues arise outside of a cause of action. However, again, it's the same analysis. Because here, for that to occur, you would have to have the federal issue be an essential element of the claim. And again, the essential element of the claim here is that the funding formula provides for funding equity for every spending that the District of Columbia does. And that the district has violated it through its funding practices, pursuant to laws that have enabled those funding practices. And therefore, there's a violation of the School Reform Act. There's, I'm sorry. Aren't they at, aren't they at, isn't their second count, maybe in some sense, first count, arguing that the Constitution withholds this power from the district? You can't do it. When Congress has spoken, Congress has spoken. So it's another element of their argument. Congress has spoken in the School Reform Act. And when Congress speaks, the power is withheld from you to do differently. Is that a constitutional thing? Well, we don't think it would be under the discriminancy clause if, as far as an issue, we think it would be under the district clause. But no, it's not a, it's a constitutional claim, but it's not one in their wealthy to complain. It's not one in the relief that they're seeking. The relief they're seeking is a violation of the School Reform Act. Well, it's an element of getting to the relief that they seek, that they not only show that you violated the School Reform Act, and that you have no power to do what you did, to alter it the way you did. The only way that comes up, though, the only way that comes up is when the district defends it. Defends its action by saying that we're unable to under the Home Rule Act. And so, yes, maybe the issue of the, of what, when Congress legislates for the district, is there a thumbprint on the legislation that doesn't exist on other local law? And does that, therefore, stop the district from deviating from the congressionally passed legislation? I'm not saying that that issue might not arise in the litigation, but under the federal question jurisdiction, that's not enough to get you in federal court. Well, maybe their argument is more like dormant commerce clause, and that is, you just can't go there. Congress has spoken, it passed a statute, and that is exclusive. And that is, and so the district simply cannot work, cannot do otherwise. And if they have a dormant district clause, they have to do something like that, which they do, but that's not under the Constitution. Because that's not what the charter schools have claimed. They disavowed any claim of field preemption in the litigation below. They were not claiming that the district had no authority to engage in any type of funding practices in public education that didn't conflict with the School Reform Act. They were not arguing that. It doesn't have any field preemption to arise under the Constitution? I'm sorry? It doesn't have any field preemption to arise under the Constitution. Conflict preemption would do. I'm saying, as far as what their complaint is, the basis for which they seek relief was not a field preemption case. Therefore, the issue was not raised. No, we characterize it as analogous to a conflict preemption case. So where Congress spoke and was focusing its energies and its concerns, and decided now is the time to use that power we retained, we are hereby exercising it. And when they do that, the Constitution means Congress has exercised its plenary power. And so the district can't alter that. And so in order to get to that issue, you would have to find whether there's a violation of the School Reform Act. And once you've found there's a violation of the School Reform Act, whether it's an issue of preemption or suppression. Well, I think you're putting that into the defense end of it. But what I'm saying is that also if you assume the district has some power to amend legislation, even if we assume maybe it's a matter of statutory construction, in each case, whether Congress intended to leave that authority to them. If their argument is, whatever your power under other statutes, or maybe even as to some elements of this statute, as to this equal funding provision, Congress has spoken and left the district no authority. And it has to add that in to have its claim survive some of the issues Judge Narvasan was raising. So it has to make that effort. This is not only a provision of the School Reform Act, but a provision of the School Reform Act that withholds power from the district to do otherwise. Would that be otherwise under the Constitution? Because in order to resolve that, you would have to interpret the School Reform Act, which is a local law. That's the one thing that we can't deviate from. Congress has spoken. It's interesting that any time you have to interpret a local law, you can't arise under the Constitution. If we had to interpret the statute to see whether what the district was doing was violating the Equal Protection Clause, it would still be a case that arises under the Constitution. That would be arising under the Constitution because there's an equal protection provision. Well, we'd have to interpret the statute to see if it would. I mean, it's just because there's an interpretation doesn't mean it doesn't arise under the Constitution. We get that all the time in constitutional avoidance cases. We believe that in the context of this case, in order for the relief that they're seeking, conjunctive relief, declaratory relief, you have to interpret the School Reform Act, which Congress has said is a local law. You don't need to get to the constitutional issue if there is one in order to find that relief. I'm sorry to keep going over this, but I think I'm still stuck in the same place, which is it seems like it's a different argument to say there's a well-pleaded complaint problem on one hand, and to say, on the other hand, you have to resolve the School Reform Act claim in order to resolve the constitutional claim. And as I understand your argument, you're treating them as one and the same. It sounds like you're saying because you need to show, because the plaintiff's theory requires showing a violation of the School Reform Act, therefore, the Supremacy Clause claim can't be a well-pleaded claim. And that I don't understand because I thought the well-pleaded complaint rule was about what's on the face of the complaint and doesn't necessarily arise by way of defense, not about whether you have to resolve a local law claim in order to find for the plaintiff on the federal law claim. It seemed different, but I may be missing something, and it seems to me you're saying that they're the same thing. Right. I think where we're having a bit of a loggerhead is just that we believe the well-pleaded complaint rule suggests or indicates that it's what you need to get to your relief. If you get to your relief by saying there's been a violation of local law, you don't need for your relief to get to any other issues about the district's authority. And to do so is only in anticipation of what the defendant raises about its authority. So under your case in chief, you don't need to get to those issues, and therefore, you don't get into federal court, even if those federal issues may arise and the state court deals with it. So in our belief... So what if there's a federal cause of action that just says, if there's a violation of the School Reform Act, there's also a violation of federal law? That's the statute. Right. Wait, I'm sorry, the statute says that? Yeah. Okay. Then it just seems like you can bring a claim under the federal statute. Except we have a statute here in 1970 that said it's local law. I get that, but I'm just saying as a hypothetical, you have a federal statute that just says, if there's a violation of the School Reform Act, it's also a violation of federal law. And then somebody brings a claim and says, I'm bringing a claim for violation of the federal law that makes the violation of the School Reform Act a violation of federal law. I don't think the answer would be, you can't do that because there's a well-pleaded complaint problem. And we wouldn't argue that. Because now you have the Congress speaking and telling you what your jurisdictional ability is. Here we have Congress speaking in 1970 saying what your jurisdictional ability is, and it says that you can't treat a congressionally enacted law for the District of Columbia as federal law. But what I do want to get to a different piece of this, because I understand some of the dissonance, let's just assume for the moment that the School Reform Act is violated, but there's a belief that they need to go further to get their relief. They need to prove somehow that the district didn't have authority to do so. Where would you look for that? And this is where I'll address the supremacy clause and the district clause. We don't think you look at the supremacy clause. I think on its face you don't. Because we already know for both jurisdictional purposes and for substantive law, congressionally enacted law for the district is local law. And as a result, the supremacy clause, which doesn't provide you any rights anyway, doesn't even put a rule of decision because we're not dealing with federal law versus local law. However, one would say, maybe, as the district court did, that the district clause may be implicated in some fashion. Because, obviously, that's dealing with a specific situation of Congress enacting law for the district. So you have to put aside the supremacy clause, even if they put it in their account, because it's not part of their claim, if what they have to prove is the authority of the district to do what it did. At best, you're in the district clause. Now, does that make it a constitutional claim? Is the whole federal question issue resolved? No. Because the district clause is merely a broad grant to the Congress to act exclusively for the district. If the district had not enacted the Home Rule Act, then maybe we're on to something. Then maybe we're at the district clause. We have to look at whether another entity has violated that exclusivity. But Congress has acted pursuant to the district clause. It's implemented the district clause. That doesn't mean the district clause is dead, but it is sort of in a dormant fashion right now because Congress has acted through the Home Rule Act. And so where you would have to go, if we're going somewhere beyond the School Reform Act, would be the Home Rule Act. And the Home Rule Act, it's been found by this court, is a hybrid federal-state law, but it's mostly all of the provisions in the Home Rule Act that deal with what the district can and cannot do, as it was stated in DeMond, is state law. As a result, you're still not into federal court, even if you have to show that authority of the District of Columbia. What we're dealing with here is, as you can see where the pleadings went in the motion to dismiss stage, everything was surrounded by, or surrounding the two provisions, 602A3 of the Home Rule Act and 717B. In other words, the district clearly can modify or amend or repeal congressional law for the district, but can it do so for post-Home Rule Act legislation or only with pre-Home Rule Act legislation? That's what's teed up as the resolution that you have to do, based on the arguments of the parties, to determine whether there's any relief here. But those provisions we submit under D.C. Circuit precedent would be state law issues because they're dealing with what the district can and cannot do. As a result, we don't think you're in federal court, even if you buy the argument from the charter schools that they need to get into the issue of the District of Columbia's authority. On the merits, if there are any questions on the merits... I don't think so. Do you have any more? All right. Thank you. We ask that you find that there's no jurisdiction in this case. Thank you. Why don't you take a couple minutes? Thank you, Your Honors. I'd like to make four quick points on the jurisdictional issues that remain. First, I just think it's a mischaracterization to say all of our claims arise under the School Reform Act. As several members of the Court noted, we have Counts 1 and Counts 2 of the complaint clearly arise under the Constitution. And I think Armstrong, Your Honor, does make clear that we do have a cause of action in equity to be able to bring those claims under the Constitution. So if you start from the assumption that we do have claims that arise under the Constitution, unless you conclude that they are so frivolous that they never opened the door to federal court, so to speak, then there is a basis for federal jurisdiction. And we would submit that both of those claims not only are not frivolous, but for reasons that Judge Millett articulated, either the District Clause or the Supremacy Clause, and perhaps the most natural home is the District Clause, has to rank congressional authority over the district as superior as a constitutional matter over conflicting district legislation. And that is a constitutional question that's directly implicated in the case here. Second, there's nothing anticipatory at all about Count 2. I think for reasons that some of the questions from the panel got to. We also think that that's true of Count 1, but there's nothing in Count 2 that predicts the district will come back and say, well, we have Home Rule Act repeal and amend authority. Instead, Count 2 invokes express preemption and obstacle preemption theories and says what the district has done here is contrary to and conflicts with the Supremacy Clause. So that theory of anticipation can't deal with Count 2. Third, and I don't think my friend from the district mentioned this provision, but again, 1366 on its terms does not apply to claims that arise under the Constitution. So if you accept Step 1 of our argument that we do have claims that arise under the Constitution, there's nothing in 1366 that suggests Congress intended to shunt those claims to superior court, which, after all, lack Article III protection. So it would be a pretty significant decision to decide  involving Congress's own equities to superior court to be resolved, particularly on issues such as important as this. Finally, with respect to the Home Rule Act provisions, we do think that the provisions at issue here are authority-allocating provisions. Section 601 and Section 717 define the relationship between Congress and the district, and under this Court's precedence, the HRA, of course, is a hybrid statute, and we think that it makes no sense  that is, Congress's reservation of authority over the district, to say that is purely a local law. Instead, that is an authority-allocating provision that this Court has held is sufficient to give rise to federal jurisdiction. So we think for all of those reasons, jurisdiction is present here, and we think that on the merits, and for the reasons set forth in our brief, the district has, for years now, been engaging in consistent, unequal funding practices that are directly in defiance of congressional commands in the School Reform Act. We think federal courts are the proper forum to hear that case, and we think that on the merits, the district has violated the School Reform Act, and that we're entitled to equitable and injunctive relief, making clear that the district is bound to and ought to be following the uniform funding mandate which Congress enacted. Tell me what your causes of action are. I take it you're claiming the equitable authority that you see in the Armstrong decision. Where else do you get... Yes, Your Honor. We think that Armstrong, for constitutional purposes, for the constitutional claim, Armstrong answers the lingering question of where the quote-unquote cause of action lies, and I won't repeat that discussion. The complaint also invoked the Home Rule Act, Section 601, as a source of authority to sue. That's set forth in the jurisdictional section of our complaint. This Court in Shook, when it was confronting the question of whether the balance of power between the Board of Education and the Control Board cited Section 601 as a source of Congress's reserved authority. Again, the district has never... That's not the same thing as a cause of action. No, that's correct, Your Honor. My point was that in Shook, this Court recognized that Section 601 is a source of congressional authority over the district. We invoke that in the complaint. My question is, what is your cause of action? We believe a cause of action also arises under the Home Rule Act, under Section 601. We would have been prepared... Yes, would the district have argued with this point on a motion to dismiss? We would have argued that there is an implied right of action under the Home Rule Act. As we note in our supplemental brief, the objection to the lack of cause of action isn't jurisdictional, certainly after Lexmark. And the district has never taken the position that there is no cause of action under the Home Rule Act. Cause of actions arise under the Constitution. Causes of action arise under the Home Rule Act. And the district, again, has never raised an objection to the existence of any of those cause of actions, which are all sufficient. Each of the jurisdictional bases we set forth in our supplemental brief are sufficient to get in the door to federal court. And particularly with respect to supplemental jurisdiction, as we mentioned in our brief, there is a discretionary component to that. And we think that discretionary component has long since been waived, given that the district has chosen to not raise the question of an objection to a federal forum until more than four and a half years into the litigation on the eve of oral argument. We think that, for that reason, this Court could comfortably say that any objection to a district court's exercise of discretionary supplemental jurisdiction, again, once you think we had a non-frivolous federal claim to get us into federal court, has long since been forfeited by the district. And for that reason, Section 1367 also provides jurisdiction over our claims. Thank you.
judges: Henderson, Srinivasan, Millett